IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| INTEGRITY COLLISION CENTER | § | |
| and BUENTELLO WRECKER SERVICE, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-14-2313 |
| | § | |
| CITY OF SUGAR LAND, TEXAS, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Integrity Collision Center ("ICC") and Buentello Wrecker Service ("BWS"), filed this action on July 17, 2014, against defendant, the City of Sugar Land, Texas ("Sugar Land") in the 434th Judicial District Court of Fort Bend County, Texas, seeking damages and injunctive relief for violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.[1] On August 12, 2014, Sugar Land removed the state court action styled <u>Integrity Collison Center, and Buentello Wrecker Service v. City of Sugar Land</u>, cause number 14-DCV-216202, by asserting that "[r]emoval is proper because Plaintiffs' suit involves a federal question. . . Specifically, Plaintiffs allege that the actions of the City violated their rights to Equal Protection guaranteed by the Fourteenth Amendment to the

_____

[1]<u>See</u> Plaintiffs' Original Petition ("Plaintiffs' Petition"), Docket Entry No. 2-1, pp. 1-3.

United States Constitution."[2]   Pending before the court is
Defendant, City of Sugar Land's Motion for Summary Judgment
("Sugar Land's MSJ") (Docket Entry No. 19). Also pending are Sugar
Land's Objections to Exhibits Attached to Plaintiffs' Response to
City's Motion for Summary Judgment and Motion to Strike Same
(Docket Entry No. 32), and plaintiffs' request to amend should the
court determine that Sugar Land's motion for summary judgment has
merit (Docket Entry No. 27).[3]   For the reasons stated below,
defendant Sugar Land's motion for summary judgment will be granted,
Sugar Land's objections to plaintiffs' exhibits will be overruled
and Sugar Land's motion to strike will be denied as moot, and
plaintiffs' request to amend will be denied.

## I.  Standard of Review

Summary judgment is authorized if the movant establishes that
there is no genuine dispute about any material fact and the law
entitles it to judgment.   Fed. R. Civ. P. 56(c).   Disputes about
material facts are "genuine" if the evidence is such that a
reasonable jury could return a verdict for the nonmoving party.
Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2510 (1986). The
Supreme Court has interpreted the plain language of Rule 56(c) to

_____

[2]Defendant City's Notice of Removal ("Notice of Removal"),
Docket Entry No. 1, p. 2 ¶ 4.

[3]Plaintiffs Integrity Collision Center and Buentello Wrecker
Service's Response to Defendant Sugar Land's Motion for Summary
Judgment ("Plaintiffs' Response"), Docket Entry No. 27, pp. 10-11.

mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986). A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting Celotex, 106 S. Ct. at 2553).

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by admissible evidence that facts exist over which there is a genuine issue for trial. Id. "[T]he nonmoving party's burden is not affected by the type of case; summary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." Id. A party opposing summary judgment must point to an evidentiary conflict in the record. Factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." Little, 37 F.3d at 1075. "[T]he court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products, Inc., 120 S. Ct. 2097, 2110 (2000).

-3-

## II.  <u>Undisputed Facts and Procedural Background</u>

Plaintiffs provide tow truck services in and around Fort Bend County, Texas.  Plaintiffs provide both consent tows where service is initiated at the request of the vehicle owner, and non-consent tows where service is initiated at the request of the police or a private party who does not own the vehicle.[4]

Sugar Land has established a towing program under which its police department refers non-consent tows to specific businesses on a rotating basis.  On March 5, 2014, and on March 12, 2014, Sugar Land ran newspaper advertisements soliciting applications from tow truck companies interested in participating in its non-consent towing rotation program.  The advertisements stated that

> the City of Sugar Land and Sugar Land Police Department
> will receive applications from Tow Truck Companies to
> provide wrecker services under a new contract.  If
> selected, you must adhere to all requirements stipulated
> in the contract.  In addition, you must adhere to all
> State and Local Laws.  A copy of the new contract and
> letter of interest may be obtained from City of Sugar
> Land, Office of the City Secretary . . .  If interested
> and you meet the operational requirements set forth in
> the contract without exception, please complete the
> letter of interest.  Please include with your letter of
> interest all documentation listed.[5]

The advertisements also stated that Sugar Land intended to limit its non-consent towing rotation list to five (5) companies, and

---

[4]<u>Id.</u> at 2 (citing Declaration of Roel Buentello, Exhibit 1, ¶¶ 1-3, and Declaration of Daniel Buentello, Exhibit 2, ¶¶ 1-3).

[5]Exhibit 7-A attached to Sugar Land's MSJ, Docket Entry No. 19-8, p. 5 (March 5th advertisement) and p. 7 (March 12th advertisement).

directed interested parties to submit sealed applications to the Office of the City Secretary on or before 11:00 a.m., Friday, March 14, 2014.[6] The "General Requirements" section of the new City Tow Truck Service Contract provided, in part: "The City will only enter into Contracts with single business entities; no DBA's. Each Contractor will be a stand-alone company with its own tow truck(s) and physical business office."[7]

BWS submitted a timely application; ICC did not submit an application.[8] On March 28, 2014, Sugar Land entered into a Tow Truck Service Contract with Big Rod's Towing, Fort Bend Storage/J&H Towing and Recovery, Mike's Wrecker Service, Long's Towing, and A&M Automotive.[9] BWS was not selected to participate in the rotation program.[10] On April 3, 2014, Roel Buentello received a letter from Sugar Land's Assistant Chief of Police stating that its application to participate in the rotation program was rejected for these reasons:

_____

[6] Id.

[7] Sugar Land's MSJ, Docket Entry No. 19, p. 23 ¶ 48 (quoting Exhibit 3-B, Tow Truck Service Contract, Docket Entry No. 19-3, ¶ 1).

[8] Plaintiffs' Response, Docket Entry No. 27, p. 3. See Declaration of Roel Buentello, Exhibit 1 to Plaintiffs' Response, Docket Entry No. 27-1, p. 2 ¶ 7; Declaration of Daniel Buentello, Exhibit 2 to Plaintiffs' Response, Docket Entry No. 27-3, p. 2 ¶¶ 5-6).

[9] Sugar Land's MSJ, Docket Entry No. 19, p. 24 ¶ 51 (citing Exhibits 1, 3-D, 3-E, 3-F, 3-G, 3-H).

[10] Id. at 2 ¶ 3. See also Plaintiffs' Response, Docket Entry No. 27, p. 6 n.6.

(1) Truck submitted registered to Gary Lynn Martin;

(2) Truck submitted [registered] to Buentello Wrecker and Auto Parts;

(3) same address for Integrity Collision which is d/b/a for Daniel Buentello; and

(4) same address for Roy's Towing which is d/b/a for Roel Buentello.[11]

On July 17, 2014, plaintiffs filed suit in state court asserting a single cause of action for violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. In pertinent part plaintiffs allege:

10. Despite the fact that they meet the City's guidelines and requirements, Plaintiffs have been denied inclusion in the City's towing program without any reasonable explanation. Contrary to its stated terms, the program was not open to all potential participants who met the requirements under City terms, and the application process or notification process was performed in a secretive manner allowing only a select number of participants. As a result, Plaintiffs were effectively denied an equal opportunity to participate in the program.

11. A demand letter was sent to Defendant on or about April 16, 2014, seeking additional information, and demanding inclusion into the program. However, to date, Defendant has failed and refused to provide any guidance or information as to any legitimate reason for its exclusion of Plaintiffs from the opportunity to participate in the program.

---

[11]Plaintiffs' Response, Docket Entry No. 27, pp. 3-4. <u>See also</u> Declaration of Roel Buentello, Exhibit 1 to Plaintiffs' Response, Docket Entry No. 27-1, p. 2 ¶ 8 ("On April 3, 2014, I received a letter from the Assistant Chief of Police for the City of Sugar Land, advising me that I was rejected from the towing program for the following reasons: (1) Truck submitted registered to Gary Lynn Martin; (2) truck submitted to Buentello Wrecker and Auto Parts . . .").

## E. CAUSES OF ACTION

I.   VIOLATION OF EQUAL PROTECTION CLAUSE

12.   Plaintiff incorporates by reference paragraphs 1-11 above.

13.   The Equal Protection Clause of the 14th Amendment to the U.S. Constitution requires that the government treat similarly situated entities equally.  A party alleging violation of equal protection "must prove he was treated differently by the government than similarly situated persons and the different treatment was not rationally related to a legitimate government objective." *Koscielski v. City of Minneapolis*, 435 F.3d 898 (8th Cir. 2006).

14.   Plaintiffs assert a violation of the Equal Protection Clause regarding inclusion in Defendant's non-consent towing program.  The disparity in treatment between Plaintiffs and businesses who have been allowed into the program is not rationally related to any legitimate governmental objective of Defendant.  The current program requirements and methods of inclusion are structured to benefit certain business without any due regard for the citizens of Missouri City or the rights of the entities excluded from the program.

15.   As a direct and proximate result of Defendant's conduct and violations of law, Plaintiffs have suffered damages in excess of the minimum jurisdictional requirements of the Court.  Such damages include but are not limited compensatory and punitive.  Although Plaintiffs cannot completely quantify their damages without additional information from Defendant and/or current participants in the program, they are expected to range anywhere between $100,000.00 and $500,000.00.

16.   The defendant has violated the terms of the directive which it issued to the towing community by allowing companies who do not meet the requirements to enter into the exclusive towing program rotation.  Defendant requires all potential tow candidates to comply with all their guidelines, procedures and directives issued by the Chief of

>       Police for entrance into the program.  Defendant
>       issued a contract stating these requirements and
>       specifics for entrance into the towing program.
>       These requirements are issued for the benefit of
>       tow providers such as Plaintiffs to streamline the
>       application process and acceptance mechanisms.[12]

On August 8, 2014, Sugar Land filed an Original Answer in state court denying generally the facts alleged in Plaintiffs' Petition,[13] and on August 12, 2014, Sugar Land removed the plaintiffs' state-court action to this court based on an assertion of federal question jurisdiction, 28 U.S.C. §§ 1331 and 1441(a).[14]

On December 5, 2014, the court held a scheduling conference, and entered a Docket Control Order with no deadline for motions to amend pleadings, and a deadline of May 1, 2015, for dispositive motions.[15]  On December 8, 2014, Sugar Land filed a Motion to Dismiss (Docket Entry No. 11), to which plaintiffs responded on January 9, 2015 (Docket Entry No. 15).  On April 24, 2015, the court denied Sugar Land's motion to dismiss because it "relie[d] on matters outside the Plaintiffs' Petition."[16]

---

[12]Plaintiffs' Petition, Docket Entry No. 2-1, pp. 3-4 ¶¶ 10-11, 14-16.

[13]Defendant City of Sugar Land's Original Answer, Docket Entry No. 2-1, pp. 13-14.

[14]Notice of Removal, Docket Entry No. 1, p. 2 ¶ 4.

[15]See Hearing Minutes and Order, Docket Entry No. 9, and Docket Control Order, Docket Entry No. 10.

[16]Order, Docket Entry No. 16, p. 1.

### III.   Sugar Land's Motion for Summary Judgment

Plaintiffs allege that denial of their application to participate in Sugar Land's towing rotation program violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.  The alleged equal protection violation is based on plaintiffs' claim that they were a "class of one" and that Sugar Land intentionally and arbitrarily treated them differently from other, similarly situated applicants.  Plaintiffs seek damages and injunctive relief.[17]

Sugar Land argues that it is entitled to summary judgment dismissing the plaintiffs' equal protection claims because "[p]laintiffs have pleaded no statutory basis that would allow them to redress a violation of federal constitutional rights;"[18] and because "[p]laintiffs' 'class-of-one' claims fail as a matter of law because the City's decisions on which tow truck companies it uses to provide towing and impoundment services to its Police Department are discretionary decisions that are not subject to an Equal Protection challenge;"[19] and because "[t]here is no factual

---

[17]See Plaintiffs' Petition, Docket Entry No. 2-1, pp. 3-5.

[18]Sugar Land's MSJ, Docket Entry No. 19, p. 2 ¶ 4.  See also id. at 4-5 ¶ 11 ("[Plaintiffs'] pleadings fail to state a cause of action for violation of their right to Equal Protection under the Fourteenth Amendment to the U.S. Constitution in that they have alleged a direct constitutional cause of action instead of a claim under the statutory framework allowed for redress of constitutional rights.").

[19]Id. at 4 ¶ 10.

basis to support the [p]laintiffs' assertion that the City's decisions with regard to the selection of companies to provide towing and impoundment services were irrational."[20]   Plaintiffs respond that Sugar Land's Motion for Summary Judgment should be denied because

> 1) Plaintiffs meet all of the requirements for a "class of one" equal protection claim under law; 2) Defendant has not provided a rational reason related to a legitimate government purpose for excluding Plaintiffs from consideration for the towing rotation by disregard-ing its own policies and procedures in selecting candidates for its wrecker rotation.[21]

## A. Plaintiffs Fail to Plead or to Raise a Fact Issue as to a Statutory Basis for Their Constitutional Claims

Asserting that plaintiffs have alleged a direct constitutional cause of action instead of a claim under 42 U.S.C. § 1983,[22] Sugar Land argues that it is entitled to summary judgment because plaintiffs

> cannot maintain a cause of action directly under the Fourteenth Amendment when seeking to assert Constitutional violations against municipalities or governmental actors, but must employ the applicable statutory mechanism when one exists --- here, 42 U.S.C. § 1983 . . .[23]

---

[20]Id. at 5 ¶ 13.

[21]Plaintiffs' Response, Docket Entry No. 27, p. 2.

[22]Sugar Land's MSJ, Docket Entry No. 19, p. 16 ¶ 37.

[23]Id. at 17 ¶ 38 (citing Berger v. City of New Orleans, 273 F.3d 1095 (5th Cir. 2001) (per curiam) (not designated for publication)).

Plaintiffs respond that Sugar Land's argument "defies the factual and procedural history of the case, to say nothing of common sense."[24]   Plaintiffs argue that since this action was originally filed in state court they did not need to allege a cause of action under § 1983; that since Sugar Land never moved to dismiss based on the failure to plead a § 1983 cause of action they should not now be precluded from asserting a constitutional claim due to a defect in pleading; and that if the court finds their pleading defective then they should be allowed to file an amended complaint under Federal Rule of Civil Procedure 15.[25]

In limited circumstances the Supreme Court has acknowledged direct causes of action under the United States Constitution for the Equal Protection Clause of the Fourteenth Amendment. See Avery v. Midland County, Texas, 88 S. Ct. 1114, 1117 (1968) (holding that a constitutional violation may lie pursuant to the Equal Protection Clause, for unequal population voting districts). Federal courts, however, and the Fifth Circuit in particular, have been hesitant to find equal protection causes of action arising directly under the Constitution. See Hearth Inc. v. Department of Public Welfare, 617 F.2d 381, 382 (5th Cir. 1980) (per curiam). Such claims have only been recognized when there "simply was no other means of seeking redress of flagrant violations of the plaintiff's constitutional

---

[24]Plaintiffs' Response, Docket Entry No. 27, p. 10.

[25]Id. at 11-12.

rights." Id. "When a statutory mechanism is available, 42 U.S.C. § 1983 being a prime example, plaintiffs must invoke its protection." Mitchell v. City of Houston, Texas, 57 F. App'x 211, 2003 WL 147729, *1 (5th Cir. 2003) (per curiam) (citing Hearth, 617 F.2d at 381, and Hunt v. Smith, 67 F. Supp. 2d 675, 681 (E.D. Tex. 1999)).

Claims based on a violation of the rights guaranteed by the Fourteenth Amendment must be predicated on § 1983 regardless of whether they are asserted in federal or state court. See Kaufman County v. Combs, 393 S.W.3d 336, 345 (Tex. App. — Dallas, 2012, writ denied) ("[T]here is no direct cause of action for equal protection or due process violations under the U.S. or Texas constitutions."). See also City of Lubbock v. Corbin, 942 S.W.2d 14, 20 (Tex. App. — Amarillo 1996, writ denied) ("Section 1983 protects all rights guaranteed by the Fourteenth Amendment, Matthias v. Bingley, 906 F.2d 1047, 1051 (5th Cir. 1990), including the right to receive due process and to equal protection of the laws. U.S. CONST. amend. XIV, § 1.").

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission

taken in such officer's judicial capacity, injunctive
relief shall not be granted unless a declaratory decree
was violated or declaratory relief was unavailable.

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of
substantive rights,' but merely provides 'a method for vindicating
federal rights elsewhere conferred.'" Graham v. Conner, 109 S. Ct.
1865, 1870 (1989) (quoting Baker v. McCollan, 99 S. Ct. 2689, 2694
n.3 (1979)).

To establish municipal liability under § 1983, plaintiffs

must show the deprivation of a federally protected right
caused by action taken "pursuant to an official municipal
policy." . . . A plaintiff must identify "(1) an official
policy (or custom), of which (2) a policymaker can be
charged with actual or constructive knowledge, and (3) a
constitutional violation whose 'moving force' is that
policy or custom."

Valle v. City of Houston, 613 F.3d 536, 541 (5th Cir. 2010) (citing
Monell v. Department of Social Services of the City of New York, 98
S. Ct. 2018, 2037-38 (1978), and quoting Pineda v. City of Houston,
291 F.3d 325, 328 (5th Cir. 2002)).

Plaintiffs have neither pleaded nor argued that the actions
about which they complain satisfy the requirements for holding a
municipality liable for an unconstitutional act of its employees,
i.e., (1) an official policy or custom, (2) of the municipality's
final policymaker, (3) that causes the plaintiff to suffer a
constitutional violation whose "moving force" is the policy or
custom. Sugar Land is therefore entitled to summary judgment on
plaintiffs' claims for violation of their Fourteenth Amendment
rights to Equal Protection. See Hearth, 617 F.2d at 383 (holding

plaintiff's complaint "fatally defective" for failing "to invoke the protection of § 1983"). Even if plaintiffs had based their claims on 42 U.S.C. § 1983, summary judgment would be proper because plaintiffs have failed to raise a genuine issue of material fact for trial.

**B.    Sugar Land is Entitled to Summary Judgment on Plaintiffs' Equal Protection Claims**

1.    <u>Applicable Law</u>

The Equal Protection Clause of the Fourteenth Amendment provides that "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." United States Constitution Amend. XIV. "The Equal Protection Clause forbids state actors from treating similarly situated individuals differently *for a discriminatory purpose* and without a rational basis." <u>Gil Ramirez Group, L.L.C. v. Houston Independent School District</u>, 786 F.3d 400, 419 (5th Cir. 2015) (emphasis in original). "[A]n equal protection claim depends on either identifying a class, <u>Washington v. Davis</u>, 96 S. Ct. 2040 (1976), or showing that the aggrieved party is a 'class of one,' <u>Village of Willowbrook v. Olech</u>, 120 S. Ct. 1073, 1074 (2000)." <u>Id.</u>

Plaintiffs do not claim that they were discriminated against on the basis of their membership in any particular class and, therefore, must rely on the class-of-one theory recognized in <u>Olech</u>, 120 S. Ct. at 1073. In <u>Olech</u> the Supreme Court recognized that an equal protection claim can be brought by a "'class of one,'

-14-

where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Id. at 1074. The plaintiffs in Olech alleged that the Village of Willowbrook (the "Village") had conditioned the connection of their property to the municipal water supply on the grant of an easement larger than the Village required of other property owners. Id. The plaintiffs alleged that the Village's request was motivated by ill will resulting from an earlier lawsuit plaintiffs had filed against the Village. Id. The district court dismissed the complaint for failure to state a claim. Id. The Seventh Circuit reversed, finding that plaintiffs had alleged a class-of-one equal protection claim. Olech v. Village of Willowbrook, 160 F.3d 386, 387 (7th Cir. 1998), cert. granted in part, 120 S. Ct. 10 (1999), and judgment aff'd, 120 S. Ct. 1073 (2000).

The Seventh Circuit recognized and was troubled by the "prospect of turning every squabble over municipal services . . . into a federal constitutional case." Olech, 160 F.3d at 388. But the Seventh Circuit concluded that this problem was alleviated by the requirement under circuit case law that the plaintiff allege and prove subjective "ill will" or "illegitimate animus" in a class-of-one equal protection case. Id. The Supreme Court affirmed in a brief per curiam opinion stating:

> Our cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated

differently from others similarly situated and that there
is no rational basis for the difference in treatment.

Olech, 120 S. Ct. 1074.   The Court concluded that the plaintiff's

allegations — that the Village demanded a larger easement than it

demanded from other similarly situated property owners, and that

the demand was "irrational and wholly arbitrary" were, "quite apart

from the Village's subjective motivation . . . sufficient to state

a claim for relief under traditional equal protection analysis."

Id. at 1075.   The Supreme Court affirmed the Seventh Circuit's

opinion but did not "reach the alternative theory of 'subjective

ill will' relied on by that court."   Id.

    2.   Application of the Law to the Undisputed Facts

      (a)  Plaintiffs' Claims Do Not Fail as a Matter of Law

Citing Engquist v. Oregon Department of Agriculture, 128

S. Ct. 2146, 2154-55 (2008), Sugar Land argues that "[p]laintiffs'

'class-of-one' claims fail as a matter of law because the City's

decisions on which tow truck companies it uses to provide towing

and impound services to its Police Department are discretionary

decisions that are not subject to an Equal Protection challenge."[26]

Plaintiffs respond that Engquist is inapposite because plaintiffs

    are not complaining that they have been removed from the
    program after having gained inclusion.   Rather,
    Plaintiffs contend that Defendant has created ostensibly
    face-neutral guidelines that it had no intention of
    following, and that it arbitrarily did not follow, for
    the sole purpose of selecting certain pre-determined

---

[26]Sugar Land's MSJ, Docket Entry No. 19, p. 4 ¶ 10.

candidates for the wrecker rotation.   This is the very
epitome of an equal protection claim.

. . .

Plaintiffs do not complain they have been removed
from the rotation unlawfully; the issue is that
Plaintiffs have never been afforded a reasonable
opportunity to compete with other, similarly situated
parties for a spot on the rotation.[27]

In Engquist the Supreme Court held that "the class-of-one

theory of equal protection does not apply in the public employment

context." 128 S. Ct. at 2151.   The Court explained that

[t]here are some forms of state action, however, which by
their nature involve discretionary decisionmaking based
on a vast array of subjective, individualized
assessments. In such cases the rule that people should
be "treated alike, under like circumstances and
conditions" is not violated when one person is treated
differently from others, because treating like
individuals differently is an accepted consequence of the
discretion granted.   In such situations, allowing a
challenge based on the arbitrary singling out of a
particular person would undermine the very discretion
that such state officials are entrusted to exercise.

Id. at 2154.   See also Harris v. Quinn, 134 S. Ct. 2618, 2653

(2014) ("the government has wider constitutional latitude when it

is acting as employer than as sovereign").

Calling attention to the obvious parallels between government

employees and government contractors, Sugar Land argues that

because of the Supreme Court's ruling in Engquist, plaintiffs'

Equal Protection Claims must fail.[28]   Sugar Land's reliance on

---

[27]Plaintiffs' Response, Docket Entry No. 27, pp. 8-9.

[28]Sugar Land's MSJ, Docket Entry No. 19, pp. 7-16 ¶¶ 24-36.

<u>Engquist</u> is misplaced, however, because <u>Engquist</u> did not abolish all class-of-one claims; it eliminated only those claims in the context of public employment.   128 S. Ct. at 2146.   The Fifth Circuit has not extended the Supreme Court's holding in <u>Engquist</u> beyond the government-employee relationship.   <u>See</u> <u>Gil Ramirez Group</u>, 786 F.3d at 419 ("<u>Engquist</u> is not dispositive of [potential government contractor's] class of one theory but cuts against it.").

(b)  Plaintiffs' Fail to Raise a Fact Issue for Trial

Sugar Land argues that plaintiffs' claims "must fail because, as a matter of law, the challenged decisions were rational and the Plaintiffs were not similarly situated in material respects to the five (5) companies chosen by the City to enter into Tow Truck Service Contract."[29]  Sugar Land also argues that "BWS's and ICC's Equal Protection claim, if they have one, fails because, there are no facts to demonstrate that the City intentionally treat[ed] ICC or BWS differently when compared to similarly situated comparators or that the City acted with ill will or personal vindictiveness toward ICC and/or BWS."[30]  Asserting that Sugar Land "arbitrarily modified the rules for particular towing companies without any rational reason for doing so[, and that t]he requirements were not applied across the board to all applicants, in clear violation of

---

[29]<u>Id.</u> at 7 ¶ 21.

[30]<u>Id.</u> ¶ 22.

Plaintiff's equal protection rights,"[31] plaintiffs argue that "no rational basis exists for the City's disregard of its own guidelines and procedures in connection with its bid process."[32]

Under rational basis review, governmental decisions are accorded a "strong presumption of validity," and will be upheld "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." Lindquist v. City of Pasadena, Texas, 656 F. Supp. 2d 662, 696 (S.D. Tex. 2009) (quoting Heller v. Doe by Doe, 113 S. Ct. 2637, 2642 (1993)). "The 'decision of a governmental body does not violate equal protection guarantees if there is any basis for the action that bears a debatably rational relationship to a conceivable legitimate governmental end.'" Id. at 696-97 (quoting Reid v. Rolling Fork Public Utility District, 979 F.2d 1084, 1087 (5th Cir. 1992)). "Rational basis review is an extremely lenient standard of review." Id. at 697. "A decision 'can be considered irrational' only when the decision-maker 'acts with no legitimate reasons for its decision.'" Id. (quoting Harlen Associates v. Village of Mineola, 273 F.3d 494, 500 (2d Cir. 2001)). "Olech does not empower federal courts to review government actions for correctness." Id. (quoting Bizzarro v. Miranda, 394 F.2d 82, 89-90 (2d Cir. 2005)). "The

---

[31] Plaintiffs' Response, Docket Entry No. 27, p. 10.

[32] Id.

<u>Olech</u> inquiry focuses on whether the challenged action or decision was rationally related to the government's work or mission." <u>Id.</u>

### (1)   ICC's Non-Selection for the Program

The undisputed evidence establishes that ICC did not submit an application to participate in the tow rotation program,[33] and that each of the five companies chosen to participate in the program "submitted an application for a City Tow Truck Service Contract."[34] Plaintiffs have not cited any evidence capable of establishing that Sugar Land's decision to not choose an entity that had not applied to participate in the program was irrational.   Accordingly, the court concludes that plaintiffs have failed to cite any evidence capable of raising a genuine issue of material fact for trial on ICC's equal protection claim.

### (2)   BWS's Non-Selection for the Program

The undisputed evidence establishes that BWS submitted a timely application to participate in the rotation program but was not selected.[35]   Sugar Land argues that its decision not to include BWS in the rotation program was rational because:

---

[33]<u>Id.</u> at 3.   <u>See also</u> Declaration of Roel Buentello, Exhibit 1 to Plaintiffs' Response, Docket Entry No. 27-1, p. 2 ¶ 7; Declaration of Daniel Buentello, Exhibit 2 to Plaintiffs' Response, Docket Entry No. 27-3, p. 2 ¶¶ 5-6.

[34]Sugar Land's MSJ, Docket Entry No. 19, p. 25 ¶ 54.

[35]<u>Id.</u> at 2 ¶ 3.   <u>See also</u> Plaintiffs' Response, Docket Entry No. 27, p. 6 n.6.

By Texas law, a tow truck company that performs nonconsent tows initiated by a police officer must obtain from TDLR an incident management permit for each tow truck it will use to perform those services. Tex. Occ. Code Ann. § 2308.103 (West 2012). TDLR then issues a Cab Card for each tow truck issued a permit. Tex. Occ. Code Ann. § 2308.108 (West 2012). The Cab Card contains the Make, Model, Year, Type, and Vehicle Identification Number (VIN) for each vehicle used in the tow truck company's business.[36]

. . .

. . . As part of the application process, BWS and the other applicants were required to provide the City with their respective TDLR Cab Card. Upon review of the State of Texas vehicle registration information for the four vehicles listed on the BWS's Cab Card, the City found that two out of the four trucks listed on the BWS's Cab Card were not owned by Buentello Wrecker Service, but instead were owned by another person (Gary Lynn Martin) or by another entity (Buentello Wrecker and Auto Parts). Exhibits 1; 2-B; 2-C; 2-D. One of the requirements of the City Contract provided that "[e]ach Contractor will be a stand-alone company with its own tow truck(s) and physical business office." Exhibits 1, 3-B.

For the five (5) companies that received a City Contract to provide towing and impound services to the City on nonconsent tows, each submitted an application for a City Tow Truck Service Contract and the tow trucks were all owned by the respective tow truck company or its owner.[37]

Sugar Land argues that

requiring tow truck companies to be the registered owners of the tow trucks that they use in their business provides protection to the public and . . . reduces the amount of effort required to manage and coordinate the provision of those services. By law, tow truck[] companies are required to have specific types and amounts of insurance. An insurance policy issued to a tow truck

---

[36]Sugar Land's MSJ, Docket Entry No. 19, p. 21 ¶ 44.

[37]Id. at 25-26 ¶¶ 53-54.

company provides insurance for the trucks owned by the
company, which protects the public in the event that the
tow truck company damages a towed vehicle or causes
injury to persons while towing a vehicle. . .

As a matter of law, BWS and ICC cannot demonstrate
that there was no conceivable rational basis for the
City's decisions to select tow truck companies that own
the vehicles that they use and to limit the total number
of companies selected to five.[38]

Without disputing the rationality of limiting the total number
of companies selected to five, and without disputing that BWS did
not own all of the tow trucks listed on its Cab Card, plaintiffs
respond that they have nevertheless carried their burden to raise
a fact issue on Sugar Land's disparate treatment of BWS's
application because Sugar Land accepted companies into the program,
which like BWS, failed to satisfy additional requirements for
participation, i.e., Sugar Land allowed three companies to
participate in the program despite employing multiple d/b/a's, and
allowed two companies to participate in the program who did not
register with the State of Texas until after the March 14th
application date.

Plaintiffs' arguments have no merit because plaintiffs do not
dispute that BWS did not own all of the tow trucks listed on its
Cab Card, and do not cite any evidence capable of establishing that
another company was selected to participate in the rotation program
despite not owning all of the tow trucks listed on its Cab Card.
For these reasons plaintiffs have failed to raise a genuine issue

---

[38]Id. at 29-30 ¶¶ 59-60.

of material fact for trial that BWS was similarly situated to any of the companies selected to participate in the rotation program, or that the ownership requirement was not applied across the board to all applicants. Moreover, since plaintiffs neither allege nor cite any evidence capable of showing that Sugar Land lacked a rational basis for requiring companies selected to participate in the program to own the tow trucks listed on their Cab Cards, the fact that some additional requirements may not have been uniformly applied across the board to all applicants is not sufficient to raise a genuine issue of material fact for trial.

Nor is plaintiffs' argument that Sugar Land arbitrarily modified the rules for particular towing companies without a rational reason sufficient to raise a fact issue for trial. "The Equal Protection Clause forbids state actors from treating similarly situated individuals differently *for a discriminatory purpose* and without a rational basis." Gil Ramirez Group, 786 F.3d at 419. "'Discriminatory purpose,' however, implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group [or plaintiff]." Personal Administrator of Massachusetts v. Feeney, 99 S. Ct. 2282, 2296 (1979). Plaintiffs have failed to cite any evidence capable of establishing that Sugar Land treated BWS differently from similarly situated individuals for a

discriminatory purpose.  That Sugar Land employees may have treated one or more parties more favorably than they treated BWS is not sufficient to show that Sugar Land treated BWS differently for a discriminatory purpose.  See Gil Ramirez Group, 786 F.3d at 419 (citing Club Italia Soccer & Sports Organization, Inc. v. Charter Township of Shelby, Michigan, 470 F.3d 286, 299 (6th Cir. 2006) (rejecting equal protection claim when one vendor "was treated beneficially, but no party was discriminated against")).

### IV.  Sugar Land's Motion to Strike Plaintiffs' Exhibits and Plaintiff[s' Request to File an Amended Complaint

#### A.  Sugar Land's Motion to Strike

Sugar Land objects and moves to strike ¶¶ 4, 9-12, and 14-17 of Roel Buentello's Declaration, Exhibit 1 to Plaintiffs' Response, and ¶¶ 7-8 and 10-12 of Daniel Buentello's Declaration, Exhibit 2 to Plaintiffs' Response on grounds that the testimony provided in these paragraphs is inadmissible for various reasons.  Sugar Land also objects and moves to strike in their entirety Exhibits 3 through 9 to Plaintiffs' Response because plaintiffs did not comply with the requirements of Federal Rule of Civil Procedure 26(a). Because the court has resolved Sugar Land's MSJ without citing any of the exhibits or portions of plaintiffs' exhibits to which Sugar Land objects and moves to strike, Sugar Land's objections will be overruled and its motion to strike will be denied as moot.

**B.   Plaintiffs' Request to Amend**

At the end of their responsive briefing to Sugar Land's MSJ, plaintiffs assert that "if the Court were inclined to agree that Plaintiff[s] should have brought a § 1983 claim, leave is respectfully sought for Plaintiffs to amend their pleadings."[39] In support of this request plaintiffs state:

> As Defendant notes in its motion, there is no pending deadline to amend pleadings. Therefore, the Federal Rules require that "the court should freely give leave when justice so requires." Fed. R. Civ. P. 15. In this case, justice and judicial economy favor granting leave to amend Plaintiffs' pleadings to comply with the technical requirements that Defendant alleges. Certainly, Plaintiffs would not be precluded by res judicata from bringing a new lawsuit against Defendant based on the same conduct, if the Court were to dismiss this case on procedural grounds. See Test Masters Educ. Svcs. v. Singh, 428 F.3d 559 (5th Cir. 2005) (recognizing that the test for res judicata requires the adjudication of the prior action on the merits).[40]

Federal Rule of Civil Procedure 15(a)(2) states that "[t]he court should freely give leave [to amend] when justice so requires."   "Although Rule 15(a) 'evinces a bias in favor of granting leave to amend,' it is not automatic."   Matter of Southmark Corp., 88 F.3d 311, 314 (5th Cir. 1996) (quoting Dussouy v. Gulf Coast Investment Corp., 660 F.2d 594, 598 (5th Cir. 1981)). "A decision to grant leave is within the discretion of the trial court.   Its discretion, however, is not broad enough to permit denial if the court lacks a substantial reason to do so."   Id.

---

[39]Plaintiffs' Response, Docket Entry No. 27, p. 11.

[40]Id. at 11-12.

(citing State of Louisiana v. Litton Mortgage Co., 50 F.3d 1298, 1302-1303 (5th Cir. 1995)).   Generally, a district court errs in dismissing a complaint for failure to state a claim under Rule 12(b)(6) without giving the plaintiff an opportunity to amend. Bazrowx v. Scott, 136 F.3d 1053, 1054 (5th Cir.) (per curiam), cert. denied, 119 S. Ct. 156 (1998).   If, however, a complaint alleges the plaintiff's best case, there is no need for further amendment.   See Jones v. Greninger, 188 F.3d 322, 327 (5th Cir. 1999) (dismissing plaintiff's pro se action because court could perceive of no viable claim plaintiff could include in an amended complaint based on the underlying facts).   The Fifth Circuit has also held that in exercising its discretion, a court may consider undue delay, bad faith, dilatory motive, undue prejudice to the opposing party, and the futility of the proposed amendment.   See Rosenzweig v. Azurix Corp., 332 F.3d 854, 864 (5th Cir. 2003) (citing Foman v. Davis, 83 S. Ct. 227, 230 (1962)).

The record demonstrates that plaintiffs initiated this action by filing a petition in state court on July 17, 2014 (Docket Entry No. 2-1, pp. 1-6); that on August 8, 2014, Sugar Land answered with a general denial (Docket Entry No. 2-1, pp. 13-18); that on August 12, 2014, Sugar Land removed plaintiffs' action to this court (Docket Entry No. 1); and that on December 5, 2014, an initial scheduling conference was held at which a Docket Control Order was entered that did not provide a deadline for amending pleadings or adding new parties (Docket Entry Nos. 9 and 10).

Sugar Land asserts in its motion for summary judgment that at the December 5, 2015, initial scheduling conference,

> [t]he Court asked Plaintiffs' attorney if he wanted to amend Plaintiffs' pleadings, and he stated that he did not. Consequently, the Court entered a Docket Control Order that had no deadline for motions to amend the pleadings. The Docket Control Order also had a deadline of May 1, 2015, for dispositive motions.[41]

Plaintiff does not dispute Sugar Land's description of the initial scheduling conference held on December 5, 2014.

Sugar Land filed its Motion to Dismiss on December 8, 2014 (Docket Entry No. 11), and plaintiffs responded on January 9, 2015 (Docket Entry No. 15), by arguing that

> [a] plain reading of Plaintiffs' current live pleading shows that it is factually sufficient to support a cause of action for violation of their equal protection rights. As such, Plaintiffs respectfully request that the Court deny the motion to dismiss and allow Plaintiffs a meaningful opportunity to conduct discovery in accordance with the Court's Scheduling Order in the case.[42]

On April 24, 2015, the court denied Sugar Land's Motion to Dismiss because it relied on matters outside the pleadings (Docket Entry No. 16). On May 1, 2015, Sugar Land filed its motion for summary judgment (Docket Entry No. 19), and plaintiffs responded on July 6, 2015 (Docket Entry No. 27), arguing in pertinent part that

> [s]ummary judgment should be denied because Plaintiff[s have] alleged facts sufficient to show that Defendant has acted in a discriminatory manner, without rational

---

[41]Sugar Land's MSJ, Docket Entry No. 19, p. 3 ¶ 7.

[42]Plaintiffs' Response to Defendant's Rule 12(b)(6) Motion to Dismiss, Docket Entry No. 15, p. 1.

> justification, as [defendant] continue[s] to deny
> Plaintiffs an equal opportunity to participate in [its]
> wrecker rotation.[43]

Nevertheless, in the last paragraphs of Plaintiffs' Response plaintiffs include a request for leave to amend unaccompanied by either a proposed amendment or a substantive discussion of the amendments contemplated. The law in this circuit is that plaintiffs are not entitled to an opportunity to satisfy the pleading requirements for governmental liability when in response to dispositive motions the plaintiffs simply declare the adequacy of their complaint and fail to take advantage of the opportunity to amend as a matter of right. See Spiller v. City of Texas City, Police Department, 130 F.3d 162, 167 (5th Cir. 1997) (citing Jacquez v. Procunier, 801 F.2d 789, 792-793 (5th Cir. 1986)). See also Babb v. Dorman, 33 F.3d 472, 479 (5th Cir. 1994) (affirming district court's refusal to grant plaintiff leave to amend his complaint after it had granted defendant's motion to dismiss because plaintiff had declared the sufficiency of his pleadings and failed to offer a sufficient amended complaint in response to the defendant's motion). Moreover, the court's conclusions that plaintiffs' have failed to raise genuine issues of material fact for trial on their constitutional claims for violation of their rights to equal protection guaranteed by the Fourteenth Amendment stated in § III.B.2(b), above, persuade the court that granting

---

[43]Id. at 2.

plaintiffs' motion for leave to amend would be futile. See Spiller, 130 F.3d at 167 (recognizing that if a complaint as amended could not withstand a motion to dismiss then leave to amend should be denied). Accordingly, the plaintiffs' requests for leave to amend will be denied.

## V. Conclusions and Order

For the reasons stated in § III, above, Defendant, City of Sugar Land's Motion for Summary Judgment (Docket Entry No. 19) is **GRANTED**. For the reasons stated in § IV.A, above, Sugar Land's Objections to Exhibits Attached to Plaintiffs' Response to City's Motion for Summary Judgment are **OVERRULED** and Sugar Land's Motion to Strike Same (Docket Entry No. 32) is **DENIED as MOOT**. For the reasons stated in § IV.B, above, plaintiffs' request to file an amended complaint asserted in their response in opposition to Sugar Land's motion for summary judgment (Docket Entry No. 27 at pp. 10-11) is **DENIED**.

SIGNED at Houston, Texas, this 30th day of September, 2015.

_____
                 SIM LAKE
UNITED STATES DISTRICT JUDGE